## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.K. and M.C.-W.**

**No. 21-0394** (Kanawha County 19-JA-586 and 19-JA-587)

## MEMORANDUM DECISION

Petitioner Mother C.C., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's April 16, 2021, order terminating her parental rights to E.K. and M.C.-W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she successfully completed the terms and conditions of her improvement period and in failing to impose the least-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed an abuse and neglect petition related to an incident in which eleven-month-old E.K. overdosed on fentanyl. According to the record, the child was "blue and lifeless." Instead of calling 9-1-1 for emergency services, petitioner took the child to a doctor's office across the street from her home. The child was transported to the hospital, treated for acute cardiac arrest, and tested positive for fentanyl. Petitioner could not explain how the child ingested the drug, although she explained that the child may have come into contact with the substance by playing with the shoes she wore to work at a veterinary emergency hospital. The DHHR alleged that petitioner and the father had a history of abusing heroin, although the mother

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

reported that she had been sober for three to four weeks. The record further shows that when law enforcement investigated E.K.'s overdose, they found drug paraphernalia in the home. At the preliminary hearing, the court ordered the DHHR to provide petitioner with individualized parenting classes, adult life skills services, random drug screens, bus passes, and supervised visitation. In order to participate in visits, petitioner was required to provide three clean drug screens. Following the preliminary hearing on September 30, 2019, petitioner tested positive for fentanyl.

In October of 2019, petitioner stipulated to the fact that her substance abuse affected her ability to properly parent her children. The circuit court accepted the stipulation and adjudicated petitioner of abusing and neglecting the children. The court then granted petitioner an improvement period and required her to participate in individualized parenting classes, adult life skills classes, inpatient substance abuse treatment, random drug screens, and a forensic psychological and substance abuse evaluation. After the adjudicatory hearing, petitioner again tested positive for fentanyl. Further, less than three weeks into the improvement period, E.K.'s father overdosed while abusing substances with petitioner. Instead of calling emergency services, petitioner texted a friend to ask for naloxone. The father ultimately died. According to the record, petitioner later "face[d] indictment for said failure to render aid," although the record is unclear as to whether she was ultimately charged. As a result of this incident, the circuit court entered an order terminating petitioner's improvement period.

In March of 2020, petitioner underwent a psychological evaluation after failing to appear for her first scheduled evaluation. During the evaluation, petitioner admitted that E.K. "ingested fentanyl that likely belonged to her." According to the report, petitioner "thought [she] had cleaned out [her] room" after getting sober, but "may not have." Ultimately, the evaluator concluded that petitioner's prognosis to attain minimally adequate parenting was "highly guarded, largely due to [a] history of polysubstance abuse and dependence, exposure of her children to circumstances that would foreseeably result in harm, impaired judgment, [a] history of domestic violence, and [a] current lack of independent housing."

The following month, petitioner completed her substance abuse treatment and entered a sober living facility. However, the DHHR noted in a court summary that same month that petitioner was "pending indictment on two counts of felony child abuse and neglect." In June of 2020, the court held a hearing, during which it reinstated petitioner's post-adjudicatory improvement period. The court updated the terms and conditions of the improvement period to include completion of the program at petitioner's sober living facility. Over the next several months, the court entered orders continuing petitioner's improvement period. During this period, however, the DHHR raised concerns regarding petitioner's visitation with the children. For example, in a February of 2021 court summary, the DHHR indicated that petitioner was inconsistent with visitation, having cancelled several visits due to her failure to confirm her attendance. Petitioner was also repeatedly unprepared for visits despite having previously been instructed to have all necessary items that she would need to take care of the children in her home, including extra clothes, food, and diapers. Further, petitioner's visitation supervisor raised concerns that petitioner left over-the-counter medication and a kitchen knife where the children could reach them. The DHHR also raised concerns that petitioner had been unemployed since November of 2020 and indicated that her family was paying her rent.

On February 16, 2021, the court held a review hearing on petitioner's improvement period during which the DHHR and guardian noted that the improvement period had expired on its own terms and requested that the matter be set for disposition.

In March of 2021, the DHHR filed a court summary indicating that petitioner had been arraigned for two counts of felony child abuse and neglect that same month and that her trial on those charges was pending. By this time, petitioner had graduated to phase two of her sober living program and was again employed. The summary noted the multidisciplinary team's recommendation for termination of petitioner's parental rights because she was "not benefitting from her parenting services." According to the summary, petitioner still failed to bring all necessities for the children to visitation.

That same month, the guardian prepared a report that recommended termination of petitioner's parental rights. Citing petitioner's refusal to immediately contact emergency services when both E.K. and the father overdosed, the guardian asserted that petitioner "placed her child, and her child's father, in direct danger and attempted to avoid responsibility for those dangers." The guardian believed that "[t]hese grave mistakes present a situation that . . . cannot be resolved through the application of [c]ourt-ordered remedial services." The guardian also noted petitioner's ongoing substance abuse treatment, but nonetheless asserted that petitioner had not, "nearly 18 months into this case, . . . obtained the stability for herself and bond with the children recommended by her psychological evaluator." The guardian noted that petitioner's criminal charges could negatively impact her stability and continued services, and waiting to determine the outcome of those charges would impede the children's permanency. Finally, the guardian noted that petitioner's forensic examination found that she suffered an extreme level of anxiety "unusual even in clinical samples" that would likely cause her "to be plagued by worry to the degree that her ability to concentrate and attend are significantly compromised." The guardian concluded that even if petitioner received support and treatment for her anxiety in conjunction with her sober living program, the guardian "would be extra-cautious to place any child back into [her] care . . . without a better demonstration of parenting ability than has been reported thus far."

On March 31, 2021, the circuit court held a dispositional hearing, during which the DHHR presented testimony that, despite her compliance with remedial and reunification services, petitioner had not demonstrated an ability to achieve adequate parenting in the statutory timeframe. The DHHR based this conclusion on the ongoing issues with petitioner's visitation and in light of her pending criminal charges. A DHHR employee testified that petitioner would be unable to accept custody of the child within three months because she was still unable to participate in unsupervised visitation and would likely be unable to maintain her home in the sober living facility because of her associated criminal charges. Further, a service provider testified that petitioner was delayed in her ability to apply lessons learned in parenting and adult life skills services to her actual parenting of the children and that the provider had actually attended visitation to demonstrate parenting lessons to petitioner. This provider confirmed that during visitation, petitioner left inappropriate items within reach of E.K. and that there were concerns about her ability to ensure the child's safety. Finally, the psychologist that conducted petitioner's forensic evaluation testified to her recommendations based on the "highly guarded" prognosis from that evaluation. Petitioner then testified on her own behalf and presented witnesses in support of her requested disposition.

Based on the evidence, the court found that petitioner was unable to attain the level of minimally adequate parenting to support reunification despite the efforts of the DHHR and service providers. According to the court, it was unsafe for the children to be in petitioner's sole custody due to the ongoing issues that placed them in danger, especially danger of ingesting drugs. Further, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's best interests.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights because she successfully completed her post-adjudicatory improvement period. In support, petitioner cites to her completion of substance abuse programs and negative drug screens to support her claim that she corrected the conditions of abuse and neglect at issue. Further, petitioner cites to testimony from a DHHR worker regarding her compliance with parenting and adult life skills, visitation, and her maintenance of employment and suitable housing.

What petitioner ignores, however, is the extensive testimony that established that she was unable to safely parent the children despite her extensive participation in services. This Court has frequently addressed situations in which a parent substantially complies with the terms and conditions of an improvement period yet fails to show sufficient improvement to warrant the return of a child to their care. Specifically, we have set forth the following in similar circumstances:

---

[2]As noted above, E.K.'s father is deceased. The permanency plan for E.K. is adoption by the paternal grandparents. The permanency plan for M.C.-W. is to remain in the custody of the nonabusing father.

While the circuit court acknowledged the mother's substantial compliance with the terms and conditions of her improvement period, we have recognized that "'it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990).'" *In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995). Moreover, "'[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court . . . "regardless of whether . . . the individual has completed all suggestions or goals set forth in family case plans."' *In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991)." *In re Jonathan Michael D.*, 194 W.Va. at 27, 459 S.E.2d at 138.

*In re B.H.*, 233 W. Va. 57, 65, 754 S.E.2d 743, 751 (2014). Further, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." *Id.* at 58, 754 S.E.2d at 745, Syl. Pt. 4.

At the time of disposition in the proceedings below, petitioner could not ensure the children's safety during supervised visitation, let alone unsupervised visitation. The record shows that petitioner was continually unprepared for visits and required assistance from her parenting provider during her visits in an attempt to facilitate her incorporation of parenting concepts taught during other services. According to the parenting provider, petitioner simply had not been able to implement what she was taught during the lessons. Further, contrary to petitioner's assertion that she corrected the conditions of abuse and neglect at issue, the evidence shows that even after extensive services petitioner continued to leave medicine in reach of the children—the very issue for which petitioner was originally adjudicated. As this Court has explained,

[a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Given that the proceedings in this case had been ongoing for approximately eighteen months, it is clear that petitioner was unable to correct the conditions of abuse and neglect in the near future, as the circuit court found.

Further, the court found that termination of petitioner's parental rights was necessary for the children's best interests. On appeal, petitioner challenges this finding and argues that termination of her rights to M.C.-W. was unnecessary because the child was placed with the nonabusing father, who opposed termination of her rights. Accordingly, petitioner asserts that termination was unnecessary to achieve permanency. We do not agree. As we have explained, West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while

leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Here, the fact that M.C.-W. was placed with the father is insufficient to preclude termination of petitioner's parental rights. Further, the fact that the father opposed termination is similarly unpersuasive, given the evidence of petitioner's continued inability to remedy the conditions of abuse and neglect and the ongoing threat that she represented to the children's health and safety. Finally, petitioner argues that E.K.'s grandparents sought only guardianship of E.K., which does not require termination of petitioner's rights. However, the DHHR represents on appeal that E.K.'s permanency plan is adoption, which necessitates termination of petitioner's rights in order to achieve permanency. As such, we find no error in the circuit court's determination that termination was necessary to protect the children.

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination of parental rights is necessary for the children's welfare. Further,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton